IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

GREAT FALLS DIVISION

_____

| | | |
|---|---|---|
| CLIFFORD TRUDEAU, | ) | Cause No. CV 07-07-GF-SEH-RKS |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | FINDINGS AND RECOMMENDATION |
| | ) | OF U.S. MAGISTRATE JUDGE |
| ARAMARK CORRECTIONS; COUNTY | ) | |
| OF CASCADE, DBA C.C.R.P.; STATE OF | ) | |
| MONTANA, DEPARTMENT OF | ) | |
| CORRECTIONS; MONTANA | ) | |
| CORRECTIONAL ENTERPRISES, | ) | |
| | ) | |
| Defendants. | ) | |

_____

Following the Court's Order of March 2, 2007, Plaintiff Clifford Trudeau filed a Second Amended Complaint on March 12, 2007. He also moved for a temporary restraining order, judicial notice of disciplinary proceedings against him, and an "emergency writ of habeas corpus" seeking his release from disciplinary segregation. Trudeau is a state prisoner proceeding pro se.

**I. Allegations of the Second Amended Complaint**

First, Trudeau alleges that he filed grievances in connection with his supervisor and with certain procedures in his cannery job at Montana Correctional Enterprises while he was at Montana State Prison. He alleges that, because he filed grievances, he was ordered to handle cans heated to

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 1

180 to 200 degrees, then was fired, placed on a no-hire list, and transferred to the Cascade County Detention Center. He also states that he was written up for three disciplinary violations, two of which were dismissed. He claims retaliation. *See* Second Am. Compl. (doc. 18) at 3-4.

Second, Trudeau claims that the Cascade County Detention Center ("CCDC") "has health and safety hazards, over crowding, a non-functional classification system, isolation, unsanitary food service, poor hygiene and sanitation, some violence, lack of programs, and unbearable ill ventilated quarters." *Id*. at 5.

Third, Trudeau asserts that he was not permitted to run for "Tier Representative" at CCDC because he was found guilty of a major disciplinary infraction at MSP. He also claims that he was offered but declined a laundry job because he has high blood pressure and felt he could not do that particular job. He asserts that, as a result, he was placed on the bottom of the priority list for job placement. He claims that this amounted to age and disability discrimination. *Id*. at 6.

Fourth, Trudeau contends that Aramark allowed its workers to make disparaging remarks and "spreading a false rumor" in retaliation for Trudeau's filing grievances about health and sanitation issues in kitchen operations. *Id*. at 7.

For his relief, Trudeau seeks "the State of Montana Correctional Enterprises" be ordered to pay the filing fee and compensatory damages for violating his First Amendment rights; that the Department of Corrections be ordered to remove an infraction from his disciplinary record; that the CCDC be ordered to have their grievance system "certified" and to process grievances regarding health and safety through the Warden; that the CCDC be ordered to pay compensatory damages "for their deliberate indifference for having to eat my meals in a shower room"; and that the Court have

the CCDC inspected, recommend changes to conform with "a standard already in place," and "[e]nclose the showers with ventilation." *Id*. at 8-9, ¶ VI.

## II. Analysis

The Court has reviewed the allegations of the Second Amended Complaint as well as the 29 pages of exhibits that Trudeau submitted with it. He fails to state a claim on which relief may be granted.

### A. Retaliation

> Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal.

*Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2004) (footnote omitted) (citing *Resnick v. Hayes*, 213 F.3d 443, 449 (9th Cir. 2000), and *Barnett v. Centoni*, 31 F.3d 813, 815-16 (9th Cir. 1994)). The Court must "'afford appropriate deference and flexibility' to prison officials in the evaluation of proffered legitimate penological reasons for conduct alleged to be retaliatory." *Pratt v. Rowland*, 65 F.3d 802, 807 (9th Cir. 1995) (quoting *Sandin v. Conner*, 515 U.S. 472, 482 (1995)). Trudeau has the burden of alleging facts sufficient to support each element. *See id*. at 808. Harm that is "more than minimal will almost always have a chilling effect." *Rhodes*, 408 F.3d at 567 n.11.

Presumably, in connection with his first count, Trudeau names as Defendants Burke, Lambert, and Bequette. *See* Second Am. Compl. at 2-3, ¶ III.B. He states no claim against Burke, because Burke had no obligation to keep Trudeau's grievance confidential; moreover, Trudeau was found guilty by an unnamed hearings officer of one of the disciplinary violations Burke alleged, so,

necessarily, the write-up reasonably advanced a legitimate correctional goal.

Trudeau states no claim against Lambert, because all he alleges against her is that she placed him on a no-hire list. Any possible harm from that action was fully dispelled by Trudeau's transfer to CCDC. While Trudeau also says that she placed him on the transfer list, he ascribes that action to Mahoney as well, and he alleges no facts whatever to support an inference that Lambert's motive was retaliatory.

As to Bequette, Trudeau says that Bequette fired him for using a procedure that was taught to him by two other persons, who had their cannery certificates. He does not say that he was fired for using a procedure that was required of him. Trudeau's claim that Bequette made him and another inmate handle hot cans also falls short of a sufficient showing of harm, because Trudeau refused to handle the cans and does not claim that he suffered some additional harm. More importantly, Trudeau himself does not consider this incident an injury or a basis for Bequette's liability. *See* Second Am. Compl. at 8.

Trudeau also claims that "Aramark" retaliated against him by allowing its workers to make disparaging remarks and "spread[] a false rumor" against him in retaliation for Trudeau's grievances about health and sanitation issues in kitchen operations. *See id*. at 7. He alleges no facts to show any participation whatever by Aramark. Disparaging remarks do not amount to retaliation. *See, e.g.*, *Keenan v. Hall*, 83 F.3d 1083, 1092 (9th Cir. 1996), *as amended*, 135 F.3d 1318 (9th Cir. 1998); *Gaut v. Sunn*, 810 F.2d 923, 925 (9th Cir. 1987) (per curiam) ("[I]t trivializes the [E]ighth [A]mendment to believe a threat constitutes a constitutional wrong.").

Trudeau's subsequent filings make it clear that he misperceives the filing of grievances as

a right on which no restrictions may be placed. Contrary to his belief, he may constitutionally be disciplined for filing repetitive, trivial, untrue, or abusive grievances. *See, e.g.*, Pl. Mot. for Judicial Notice (doc. 20) Exhibits at 8. He has a right to make his complaints known, but he does not have a right to make them known in any manner of his choosing. Moreover, adverse action taken against him does not become retaliation merely because he has filed a grievance or a civil action in federal court. That, however, is the only fact he has offered in support of his allegations. It is not enough. Trudeau's retaliation claims should be dismissed.

### B. Conditions of Confinement at CCDC

As Trudeau was previously advised, "[t]he Constitution 'does not mandate comfortable prisons.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981)). Nor is the Eighth Amendment a mandate for federal courts to become involved in routine prison administration. *Hoptowit v. Ray*, 682 F.2d 1237, 1246 (9th Cir. 1982). To state a claim under the Eighth Amendment, the prisoner-plaintiff must show not only that prison officials were subjectively and actually indifferent to the plight he alleges, but also that the conditions themselves were objectively sufficiently serious to acquire constitutional dimension; that is, the conditions "must result in the denial of the minimal civilized measure of life's necessities." *Farmer*, 511 U.S. at 834 (quoting *Rhodes*, 452 U.S. at 347). Generally, only the most severe deprivations can support an Eighth Amendment claim. However, "[m]ore modest deprivations can also form the objective basis of a violation, but only if such deprivations are lengthy or ongoing." *See Johnson v. Lewis*, 217 F.3d 726, 732 (9th Cir. 2000). "To find an Eighth Amendment violation, courts must identify specific conditions that fail to meet Eighth Amendment requirements." *Hoptowit*, 682 F.2d

at 1247; *see also id*. n.3.  A "totality of circumstances" test is not to be applied.  *Id*. at 1247.  The Court also gave Trudeau an example of the severity of deprivations that are required to state a claim on which relief might be granted under the Eighth Amendment.  *See* Order (doc. 17) at 7-8.

Despite this guidance and an opportunity to amend, Trudeau offers the Court nothing but conclusory allegations that fail to support an inference that the conditions at CCDC rise to the level of violating the Constitution.  For example, he claims that "[s]team and moisture settles on our food" because "the showers are right next to our eating tables," that the Warden permitted food to be served cold, that food carts had "dried food soils on them," and that "vents drop dust and fibers onto the tables while eating."  Second Am. Compl. at 5.  However, "[t]he fact that the food occasionally contains foreign objects or sometimes is served cold, while unpleasant, does not amount to a constitutional deprivation."  *LeMaire v. Maass*, 12 F.3d 1444, 1456 (9th Cir. 1993).  A "lack of sanitation that is severe or prolonged can constitute an infliction of pain within the meaning of the Eighth Amendment," *Anderson v. County of Kern*, 45 F.3d 1310, 1314 (9th Cir. 1995), but Trudeau offers no facts that would indicate that the conditions of which he complains are so serious that they result in a deprivation of "the minimal civilized measure of life's necessities."  On the contrary, the conditions he describes might occur in virtually any school cafeteria.

Trudeau's claims relating to living conditions at CCDC are trivial.  They should be dismissed.

### C. Age and Disability Discrimination

For the sake of argument, the Court will assume that operations at the CCDC are subject to laws regarding age and disability discrimination and subject defendants to money damages as well

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 6

as equitable relief. *Cf. United States v. Georgia*, 546 U.S. 151, 126 S. Ct. 877, 881-82 (2006).

Even so, Trudeau does not claim that any Defendant refused to place him in the laundry job because of his age. On the contrary, he states that he chose to decline the job because of his age and health. Therefore, he cannot state a claim against any Defendant for age discrimination.

As to his claim under the Americans with Disabilities Act, Trudeau alleges no facts showing that he was a qualified individual with a disability, capable of performing the essential functions of an existing and available job for which he was otherwise qualified, with or without a reasonable accommodation. *See* 42 U.S.C. § 12111(8); *Bates v. United Parcel Serv., Inc.*, 465 F.3d 1069, 1076 (9th Cir. 2006). Instead, he appears to believe that the Defendants' failure to offer him a job he felt he could do violated the ADA. He is mistaken. The ADA does not confer an entitlement to employment of the plaintiff's choice. Neither Trudeau's decision to decline the job nor his resulting placement at the bottom of the employment priority list violated the ADA.

### D. "Tier Representative"

Trudeau was not permitted to seek election as "Tier Representative" because he had received a major disciplinary infraction at Montana State Prison. He cannot state a claim on this basis. The policy is clearly related to the legitimate penological objective of admitting those who have proven capable of following rules to the privilege of representing their fellow inmates and preventing those who have proven they lack that capacity from obtaining a position of prestige or influence within the facility. Trudeau's claim is specious.

## III. Trudeau's Other Filings

Despite guidance and an opportunity to amend, Trudeau fails to state a claim on which relief

may be granted. His other filings lack merit for the same reasons his Second Amended Complaint fails to state a claim. They will not be further discussed.

Based on the foregoing, the Court enters the following:

## ORDER

Trudeau's motion for judicial notice (doc. 20) and for an "emergency writ of habeas corpus" (doc. 21) are DENIED.

The Court also enters the following:

## RECOMMENDATION

Trudeau's motion for a temporary restraining order (doc. 19) should be DENIED and his Second Amended Complaint (doc. 18) should be DISMISSED WITH PREJUDICE for failure to state a claim on which relief may be granted.

2. The docket should reflect that his filing of this action counts as one strike for failure to state a claim, pursuant to 28 U.S.C. § 1915(g).

3. Pursuant to Fed. R. App. P. 24(a)(3), the district court should CERTIFY that any appeal from this action would be taken in bad faith.

The Clerk of Court shall serve a copy of the Findings and Recommendation of the United States Magistrate Judge upon the Plaintiff. Plaintiff is advised that, pursuant to 28 U.S.C. § 636, any objections to these findings must be filed or delivered to prison authorities for mailing within twenty (20) calendar days[1] after the entry date reflected on the Notice of Electronic Filing, or objection is

---

[1] In prisoner cases, this Court extends the time to object to twenty days in order to take into account the somewhat greater mailing time that is involved in sending documents into and out of a

waived.

<u>Trudeau must immediately inform the Court of any change in his mailing address.</u> Failure to do so may result in dismissal of the case without notice.

DATED this <u>10th</u> day of April, 2007.

<u>/s/ Keith Strong</u>
Keith Strong
United States Magistrate Judge

---

prison facility.